UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Katina Duran, | ) | CASE NO. 3:12 CV 1801 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| Mortgage Electronic | ) | AND ORDER |
| Registration Systems, Inc., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Katina Duran filed this action against Mortgage Electronic Registration Systems, Inc. ("MERS"), Serena Harmon, and Bank of America Home Loans Servicing, L.P. in the Lucas County, Ohio Court of Common Pleas on June 15, 2012.  She alleges the Defendants engaged in mortgage fraud, and asserts claims for denial of due process, and violation of the Securities Exchange Act, 15 U.S.C. §§ 77(b), 780, 781; 18 U.S.C. § 1510; and 11 U.S.C. § 548.  She asks the Court to declare her to be the fee simple owner of the real property in question.  The Defendants collectively filed a Notice of Removal to this federal court on July 13, 2012, based on diversity of citizenship and federal question jurisdiction.

Plaintiff filed an Amended Complaint on August 6, 2012, against MERS, Serena Harmon, and Bank of America Home Loans Servicing, L.P., and added as Defendants Notary Teresa L.

Bese, Five Brothers Default Management Solutions, Employee Erla Carter Shaw, Attorney Jeffrey Laurito, Attorney Nicholas Cardinal, and the law firm of McGlinchy, Stafford, LLP. The Amended Complaint abandons the legal claims asserted in the original Complaint, and replaces them with claims for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640, and the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c). Plaintiff seeks "triple damages" under RICO. She does not indicate the relief she seeks under TILA.

## I. Background

The events leading up to this case began on December 24, 2007, when Plaintiff entered into a loan agreement with Taylor, Bean and Whitaker Mortgage Corp. ("TBW") for the purpose of purchasing or refinancing property located at 7346 Hill Avenue, Holland, Ohio 43528. Plaintiff signed a promissory note in the amount of $176,407.00 (Doc. 10 at 50). Plaintiff also signed a security agreement ("mortgage") granting MERS and its successors and assigns a security interest in the property in the amount of the promissory note to hold as mortgagee and nominee for TBW (Doc. 10 at 51). The mortgage is endorsed by Plaintiff and by Ms. Carter Shaw on behalf of TBW.

In August 2009, the Florida Office of Financial Regulation issued a Cease and Desist Order through an administrative proceeding against TBW that suspended its ability to accept any applications for mortgage loans from Florida consumers or applications for mortgage loans secured by Florida real property, and ordered TBW to cease advertising as a mortgage lender in the State of Florida. The Office of Financial Regulation filed an administrative Complaint against TBW on August 10, 2009, seeking to revoke its Florida mortgage lender's license and cancelled its surety bond. During a telephone conference conducted on August 20, 2009, TBW admitted to the Office that it continued to service 34,922 private non-federal loans in Florida but was preparing to declare bankruptcy. While the first Cease and Desist order permitted TBW to continue to service loans,

the Florida Office of Financial Regulation determined TBW was not capable of performing this service. A new Order was issued on August 21, 2009, governing the activities and servicing of current loans in Florida. TBW filed bankruptcy in the United States Bankruptcy Court for the Middle District of Florida in December 2009.

In December 2009, MERS assigned the mortgage on the Hill Avenue, Holland, Ohio property to Bank of America Home Loan Servicing, L.P. Plaintiff claims the transfer was fraudulent. Specifically, she alleges that the assignment was "robo-signed" by Serena Harman, the Assistant Vice President of MERS, and notarized in Dallas, Texas by Teresa Bese indicating she personally witnessed the signature of Ms. Harman. Plaintiff contends the assignment cannot be valid because TBW had been told to cease and desist doing business months earlier in August 2009. She further claims that when TBW was told to cease and desist by the Florida Office of Financial Regulation, she "rescinded [her] loan with [TBW] and Bank of America" under the TILA. Neither financial institution recognized her attempt at rescission.

Bank of America Home Loan Servicing, L.P. filed a foreclosure action against Ms. Duran in the Lucas County Court of Common Pleas on June 6, 2012. *See Bank of America v. Duran*, No. CI-201203667-000 (Lucas Cty. Ct. Comm. Pl. filed June 6, 2012). In response, Ms. Duran filed a civil action against MERS, Serena Harman, and Bank of America Home Loan Servicing, L.P. on June 15, 2012. *See Duran v. Mortgage Electronic Registration Systems, Inc.*, No. CI-201203839-000 (Lucas Cty Ct. Comm. Pl. filed June 15, 2012). That action was removed to federal court and became this case. The Lucas County Court of Common Pleas issued an order staying the foreclosure action pending resolution of the matter before this Court.

On August 8, 2012, Bank of America, Serena Harmen, and MERS filed a Motion to Dismiss the Amended Complaint (Doc. 11). Defendants contend Plaintiff lacks standing to

3

challenge the assignment of the mortgage.  They further allege the statute of limitations to file a

TILA claim expired, and Plaintiff failed to state a claim for relief under RICO.  Plaintiff filed her

objection to the Motion to Dismiss (Doc. 13) reiterating her claims in her Amended Complaint.

In addition, Plaintiff filed a Motion to Show Cause (Doc. 16) which appears to be a set of

interrogatories she would like to have answered.  Defendants Erla Carter Shaw and Nicholas

Cardinal each filed a Motion for More Definite Statement (Docs. 20 and 25).  Plaintiff responded to

Ms. Shaw's Motion on September 24, 2012 (Doc. 22), repeating the assertions in her other filings.

For the reasons stated below, the Motion to Dismiss (Doc. 11) is **granted.**  Plaintiff's

Motion to Show Cause (Doc. 16) is **denied**.  Plaintiff's remaining claims are dismissed for lack of

subject matter jurisdiction.

## II. Standard of Review

### A. Subject Matter Jurisdiction

The Complaint is premised entirely on Plaintiff's challenge to the validity of the assignment

of the mortgage from MERS, as nominee for TBW, to Bank of America Home Loan Servicing,

L.P.  Defendants claim the Plaintiff lacks standing to assert claims which pertain to the mortgage

assignment.  Where a Plaintiff cannot show the requirements for standing, the Court should dismiss

the claim under Fed. R. Civ. P. 12(b)(1) which allows dismissal for "lack of jurisdiction over the

subject matter" of claims asserted in the Complaint.  Fed.R.Civ.P. 12(b)(1).  *See Morrison v. Amway*

*Corp.*, 323 F.3d 920, 925 (11th Cir. 2003).

Generally,  Fed.R.Civ.P. 12(b)(1) challenges fall into two categories: facial attacks and

factual attacks.  Fed.R.Civ.P. 12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994).  A

facial attack challenges the sufficiency of the pleading itself.  In contrast, a factual attack challenges

the factual existence of subject matter jurisdiction.  *See In re Title Ins. Antitrust Cases*, 702 F.Supp.2d

4

840, 884 -85 (N.D. Ohio 2010).  Where the Defendants pose a facial attack on subject matter jurisdiction, the Court must accept the Plaintiff's material allegations in the Complaint as true. *Ritchie*, 15 F.3d at 598.  In contrast, if the motion presents a factual attack, then the Court is free to consider extrinsic evidence and may weigh the evidence of its own jurisdiction without affording the Plaintiff the presumption of truthfulness.  *Abdelkhaleq v. Precision Door of Akron*, No. 5:07cv3585, 2008 WL 3980339, at *2 (N.D. Ohio Aug. 21, 2008); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986); *see Ernst v. Rising*, 427 F.3d 351, 372 (6th Cir.2005).  "[W]here subject matter jurisdiction is challenged under Rule 12(b)(1) ... the Plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Rogers*, 798 F.2d at 915.

Moreover, every federal court has an independent obligation to satisfy itself of its own jurisdiction, and may not entertain an action over which jurisdiction is lacking.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231(1990).  *See Cleveland Surgi-Center, Inc. v. Jones*, 2 F.3d 686, 691 (6th Cir.1993).  Jurisdiction issues can be raised *sua sponte* by a federal court when there is an indication that jurisdiction is lacking.  *United States v. Means*, 133 F.3d 444, 448 (6th Cir.1998).  Finally, lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

### B.  Failure to State a Claim

Bank of America, N.A., Serena Harman, and MERS also assert under Federal Civil Procedure Rule 12(b)(6) that the Plaintiff failed to state a claim upon which relief may be granted. When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint.  *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and recently in *Ashcroft v.*

*Iqbal,* 556 U.S. 662, 677-78 (2009) clarified the law regarding what the Plaintiff must plead in order to survive a Motion to Dismiss under Rule 12(b)(6).

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.  The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.*  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal* further explains the "plausibility" requirement, stating that "a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78.  Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*  This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment.  FED. R. CIV. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### III. Analysis

### A. Standing to Challenge Mortgage Assignment

Both of Plaintiff's claims are premised on her assertion that the assignment of the mortgage from MERS, as nominee for TBW, to Bank of America Home Loan Servicing, L.P. was invalid. Defendants contend the action should be dismissed because Plaintiff lacks standing to contest the validity of a transaction to which she was not a party. Because Defendants dispute the sufficiency of Plaintiff's pleading, the Motion to Dismiss takes the form of a facial attack. Accordingly, all of the Plaintiff's material allegations are taken as true and construed in her favor.

In every federal case, the party bringing the suit has the burden to establish standing to prosecute the action. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Federal courts must balance "the heavy obligation to exercise jurisdiction," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 820 (1976), against the "deeply rooted" commitment "not to pass on questions of constitutionality" unless adjudication of the constitutional issue is necessary. *Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944). Consistent with these principles, standing jurisprudence has two components: Article III standing, which enforces the Constitution's case or controversy requirement, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-62 (1992); and prudential standing, which embodies "judicially self-imposed limits on the exercise of federal jurisdiction." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

To establish Article III standing, the Plaintiff must show that the conduct of which she complains caused her to suffer an "injury in fact" that a favorable judgment will redress. *See Lujan*, 504 U.S. at 560- 61. An "injury in fact" is an invasion of a legally protected interest of the Plaintiff which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or

7

'hypothetical.'" *Warth*, 422 U.S. at 508; *see Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). There must be a causal connection between the injury and the conduct of which Plaintiff complained. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42, (1976). In other words, the injury has to be "fairly ... trace[able] to the challenged action of the Defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Id.* Finally, it must be "likely" as opposed to merely "speculative," that the injury will be redressed by a favorable decision. *Id.* at 38.

Prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's Complaint fall within the zone of interests protected by the law invoked." *Allen*, 468 U.S. at 751. A party must assert his or her own legal rights and interests, and cannot rest his or her claim to relief on the legal rights or interests of third parties. *Warth*, 422 U.S. at 499; *Allstate Insurance Co. v. Wayne County*, 760 F.2d 689, 693 (6th Cir. 1985).

Courts have consistently found that a debtor may not challenge an assignment between an assignor and assignee. *See Yuille v. American Home Mortg. Services, Inc.*, --- F.Supp.3d ----, No. 10–2564 2012 WL 1914056, at *2, slip op. (6th Cir. Oct. 30, 2012)(Plaintiff, as a stranger to the assignment, lacked standing to challenge its validity); *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, No. 10–1782, 2010 WL 4275305, at *4 (6th Cir. Oct. 28, 2010)(citing *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 717 F.Supp.2d 724, 748 (E.D. Mich. 2010)("a litigant who is not a party to an assignment lacks standing to challenge that assignment")); *Popov v. Deutsche Bank Nat. Trust Co.*, --- F.Supp.3d ----, No. 1:12–cv–00170, 2012 WL 5364301, at *2 -3 slip op. (N.D. Ohio Oct, 30, 2012)(" Plaintiff's status and obligations under the contract are unaffected by any assignment by MERS and Plaintiff lacks standing to challenge said

8

assignment"); *McCann v. U.S. Bank, N.A.*, --- F.Supp.2d ----, No. 11–14804, 2012 WL 1902481, at *4 slip op. (E.D. Mich. May 25, 2012)("A debtor generally lacks standing to challenge an assignment…because it is not a third-party beneficiary of the contract between the assignor and assignee.")(quoting *Livonia*, 717 F.Supp.2d at 748);  *Bridge v. Aames Capital Corp.*, No. 1:09 CV 2947, 2010 WL 3834059, at *3-6 (N.D. Ohio Sept. 29, 2010)(finding Plaintiff lacks standing to challenge a mortgage assignment to which she was not a party).

There are two contracts at issue in most mortgage assignments.  The first is the underlying contract between the Debtor (in this case the Plaintiff) and the original holder of the mortgage (MERS).  The second contract at issue is the assignment contract between the original mortgage holder (MERS) and the entity to which the mortgage is assigned (Bank of America Home Loan Servicing, L.P.).  The two contracts are entirely separate from one another.  Even after the assignment of the contract, the Debtor's rights and duties under the underlying contract remain the same.  The only change for the Debtor is to whom those duties are owed.  The Debtor is not a party to the second assignment contract, and has no cognizable interest in it.  If there was an irregularity in the assignment contract, only the contract rights of the original mortgage holder and the entity to which it was assigned are affected.  The Debtor has no right to step into the original mortgage holder's shoes to raise its contract rights against the Assignee.  *See Ifert v. Miller*, 138 B.R. 159, 166 n. 13 (Bankr.E.D.Pa.1992).

In this case, Plaintiff , as the Debtor, lacks standing to challenge the assignment contract between MERS and Bank of America.  She signed a mortgage agreement with TBW in 2007, which specifically gave the mortgage security interest to MERS (Doc. 10 at 51).  That agreement clearly states:

> This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS").  MERS is a separate corporation that is

9

> acting solely as nominee for Lender and Lender's successors and
> assignments.  MERS is the mortgagee under this security instrument.

(Doc. 10 at 51).  MERS assigned that security interest to Bank of America Home Loan Servicing, L.P. in a separate contract executed two years later in December 2009.  There is no dispute between MERS and Bank of America Home Loan Servicing, L.P. as to whether the mortgage was properly assigned.  Plaintiff is the only party challenging the validity of the assignment.  Bank of America, MERS, and Serena Harman argue that Plaintiff was not a party to this transfer nor were her contractual obligations under the mortgage affected in any way. (Doc. 11 at 6-7).  I agree.

This action was filed in response to a foreclosure action.  If Plaintiff is in default on her loan, she is subject to foreclosure proceedings by the holder of the mortgage note.  Whether that holder is MERS or Bank of America makes no difference with respect to the obligations owed by Plaintiff under the mortgage contract.  *See Livonia Property Holdings*, No. 10–1782, 2010 WL 4275305, at *8 (holding that "borrower certainly has an interest in avoiding foreclosure, but the validity of the assignments does not affect whether Borrower owes its obligations, but only to whom Borrower is obligated").  Regardless of the outcome of this litigation, Plaintiff must still litigate the issue of default on her mortgage in the course of the foreclosure action which is not before me. As a consequence, Plaintiff has not suffered any injury as a result of the assignment between MERS and Bank of America nor is there any likelihood that Plaintiff's requested relief will prevent her alleged injury.  *Popov*, --- F.Supp.3d ----, No. 1:12–cv–00170, 2012 WL 5364301, at *2 -3.  Without an injury in fact, Plaintiff lacks standing to challenge the assignment of the mortgage, and this Court lacks subject matter jurisdiction to entertain that question.  As the entire Complaint is based on her challenge to the assignment, the case must be dismissed pursuant to Federal Civil Procedure Rule 12(b)(1).

**B. Failure to State a Claim**

Furthermore, even if the Court had subject matter jurisdiction to entertain this matter, the only two legal claims which are readily ascertainable from Plaintiff's Amended Complaint fail to state a claim upon which relief may be granted.  To the extent that the claims could be construed as something other than a challenge to the mortgage assignment, they are still subject to dismissal.

**1.  Truth in Lending**

Plaintiff first claims, without explanation, that the Defendants violated the Truth in Lending Act ("TILA").  The Complaint does not clearly specify which actions of the Defendants violated TILA.  Plaintiff claims that when she discovered TBW was given a Cease and Desist letter in August 2009, by the Florida Office of Financial Regulation, she "rescinded [her] loan with Taylor Bean and Whitaker and Bank of America" (Doc. 10 at 6).  She also contends, without explanation, that there was "fraud within [her] loan."  (Doc. 10 at 6).  She indicates she submitted a fraud claim as a creditor of TBW in TBW's bankruptcy action and attaches an order from the bankruptcy judge informing Plaintiff that she and all others were bound by the Confirmed Plan of Liquidation.  She alleges a motion for relief was not presented to the Florida Bankruptcy Court which she contends caused her undue stress and aggravation (Doc. 10 at 5).  Defendants argue that a claim under TILA is time-barred.

The Truth in Lending Act, 15 U.S.C. § 1601, et seq., "was enacted to promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms," *Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 875 -876 (6th Cir. 2006)(quoting *Begala v. PNC Bank, Ohio, N. A.*, 163 F.3d 948, 950 (6th Cir.1998).  "TILA requires that creditors provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights, as well as notice of the borrower's right of rescission." *Fiorenza v.*

11

*Fremont Inv. & Loan,* No. 08–CV–858, 2008 WL 2517139, at \*2 (S.D.N.Y. June 20, 2008) (internal quotation marks omitted). The statute also provides for penalties if the creditor fails to make certain disclosures required under the statute. 15 U.S.C. § 1640(a). To prevail on a claim for damages for violations of TILA, a plaintiff must bring suit within one year from "the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Under § 1635, if the TILA disclosures are never made, the obligor has a continuing right to rescind and that right to rescind is not dependent upon the one-year statute of limitations period for a claim for damages. *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 251 (6th Cir.1980). The obligor's continuing right of rescission expires three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, even if the required disclosures have not been made. 15 U.S.C. § 1635(f).

To the extent Plaintiff is seeking damages for violation of TILA, her claim is time-barred. TILA has a one-year statute of limitations for damages actions. 15 U.S.C. § 1640(e). The mortgage in question was signed on or about December 24, 2007, and the Complaint was filed in state court four and one half years later on June 15, 2012. A damages claim under TILA for failure to make material disclosures in the mortgage agreement is untimely.

Plaintiff indicates she attempted to rescind the mortgage agreement. The remedy of rescission is available for up to three days after the transaction, and in some cases, up to three years. *See* 15 U.S.C. § 1635(f). The rescission provision of § 1635, however, "does not apply to ... a residential mortgage transaction as defined in section 1602(w) of this title." §1635(e) and (e)(1). "The term 'residential mortgage transaction' means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w). In other words, the right

12

to rescind under TILA would exist only if the property had not itself been the security for the loan obtained to purchase the property. *Girgis v. Countrywide Home Loans, Inc.*, 733 F.Supp.2d 835, 843 (N.D. Ohio 2010). In this case, it appears the residential property itself was the security for the loan, and this was a residential mortgage transaction as defined by § 1602(w). The remedy of rescission is not available to Plaintiff.

Even if a residential mortgage transaction was not at issue and Plaintiff could rescind the transaction, she is time-barred from seeking this relief. Pursuant to 15 U.S.C. §1635(a), a borrower has the right to rescind the transaction until "midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later." 15 U.S.C. § 1635(a). Plaintiff therefore had three days from December 24, 2007, the date on which she signed the mortgage contract, to rescind the contract. To state a claim for rescission after that three-day period had elapsed, Plaintiff must plead facts that suggest MERS and/or TBW failed to inform her of her right to rescind the transaction or failed to make the other required TILA disclosures. *See Rudisell*, 622 F.2d at 251. The Plaintiff does not allege sufficient facts to suggest either of these scenarios occurred.

Plaintiff includes one sentence in her Amended Complaint in which she states, "I received only one copy of the Notice or Right to Cancel in connection with Taylor Bean and Whitaker mortgages." (Doc. 10 at 5). She then claims she attempted to rescind "when Taylor Bean and Whitaker was shut down for fraud and put into a Federal Court of Florida" (Doc.10 at 2). There is no indication in the Complaint that either MERS or TBW failed to adequately inform Plaintiff of her right to rescind the agreement or to make other material disclosures. She has not pled facts to

suggest the right to rescind the agreement could be made after the three day limitation period expired.

Even assuming Plaintiff did not receive the proper Notice of Right to Cancel forms and was not adequately informed of her right to rescind her loan agreement, the latest date on which she could have requested rescission in a timely manner would have been three years after she signed the loan, in this case December 24, 2010. *Id.* Plaintiff filed this action in state court in June 2012. A request for rescission in this action would be made five years after the mortgage was signed, which is well beyond the extended limitation period.

Finally, I note that rescission under the statute is available to restore parties, as much as possible, to the position they held prior to entering into the transaction. *Barrett ,* 445 F.3d at 875. *See Yamamoto v. Bank of N.Y.,* 329 F.3d 1167, 1173 (9th Cir.2003); *Williams v. Homestake Mortgage Co.,* 968 F.2d 1137, 1140 (11th Cir.1992). It would not simply vest clear title in the property in Plaintiff absent an obligation on Plaintiff's part to return the money she received to purchase the residence. *Decision One Mortgage Co. v. Fraley*, No. 00-3270, 2000 WL 1889700, at *2 (6th Cir. Dec. 19, 2000). She would not be able to simply cancel the mortgage and keep all of the monies paid to her or to the seller at the time of the closing for the purchase or refinancing of the home. *Id.* A rescission would cancel the deal in its entirety, including the benefit of the loan monies Plaintiff received as a result of the transaction. Even if the action were not barred by the limitations period and Plaintiff were able to rescind the transaction, it likely would not result in the relief Plaintiff appears to seek.

## C.  RICO

Plaintiff also includes a claim under RICO. Pursuant to 18 U.S.C. § 1964(c), RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." In turn, Section 1962 states in relevant part:

14

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection ... (c) of this section.

A "pattern of racketeering activity" requires at least two acts of "racketeering activity" which are set forth in Section 1961(1).[1]  18 U.S.C. § 1961(5).  An "unlawful debt" is a debt which

---

[1]     18 U.S.C. § 1961(1) defines a "racketeering activity" as: (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: §201 (bribery),§ 224 (sports bribery), §§471, 472, and 473 (counterfeiting), §659 (theft from interstate shipment),§664 (embezzlement from pension and welfare funds), §891-894 (extortionate credit transactions), §1028 (fraud and in connection with identification documents), §1029 (fraud in connection with access devices), §1084 (transmission of gambling information), §1341 (mail fraud), §1343 (wire fraud), §1344 (financial institution fraud), §1425 (unlawful procurement of citizenship or nationalization), §1426 (reproduction of naturalization or citizenship papers), §1427 (sale of naturalization or citizenship papers),§ 1461-1465 (obscene matter), §1503 (obstruction of justice), §1510 (obstruction of criminal investigations), §1511 (obstruction of State or local law enforcement), §1512 (tampering with a witness, victim, or an informant), §1513 (retaliating against a witness, victim, or an informant), §1542 (false statement in application and use of passport), §1543 (forgery or false use of passport),§1544 (misuse of passport), §1546 (fraud and misuse of visas,), §§1581-1591 (slavery, and trafficking in persons), §1951 (interference with commerce, robbery, or extortion), §1952 (racketeering), §1953 (interstate transportation of wagering paraphernalia), §1954 (unlawful welfare fund payments), §1955 (illegal gambling businesses), §1956 (money laundering), §1957 (engaging in monetary transactions in property derived from specified unlawful activity), §1958 (use of interstate commerce in the commission of murder-for-hire), §§2251, 2251A, 2252, and 2260 (sexual exploitation of children), §§ 2312 and 2313 (interstate transportation of stolen motor vehicles), §§2314 and 2315 interstate transportation of stolen property), §2318 (trafficking in counterfeit labels for phonorecords, computer programs and motion pictures), §2319 (criminal infringement of a copyright), §2319A (unauthorized trafficking in sound recordings and music videos), §2320 (trafficking in goods or services bearing counterfeit marks), §2321 (trafficking in certain motor vehicles or motor vehicle parts), §§2341-2346 (trafficking in contraband cigarettes), §§2421-24 (slave traffic), (C) any act which is indictable under title 29, United States Code, §186 (restrictions on payments and loans to labor organizations) or §501(c) (embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under §157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in §102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any

was incurred in an illegal gambling activity through an illegal gambling business, or a debt unenforceable because of usury laws and which was obtained through a business enterprise that loans money at a usury interest rate that is at least twice the enforceable rate. 18 U.S.C. § 1961(6); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 229 (6th Cir. 1997). To prove a Defendant violated Section 1962(c), it is necessary for the Plaintiff to prove either that the Defendant committed two predicate offenses to establish a pattern of racketeering activity or that the Defendant was engaged in the business of collecting illegal gambling debts or debts with interest rates twice the State or Federal usury rates. To violate Section 1962(d), a Defendant must conspire with another person who commits two acts of racketeering activity. *United States v. Joseph,* 781 F.2d 549, 554 (6th Cir.1986).

Plaintiff does not clearly set forth the grounds for her RICO claim. She indicates the foreclosure assignment was forged. She indicates that "a mortgage assignment in Ohio signed by a Notary in Texas is against the law" (Doc. 10 at 5). She alleges Serena Harman could not sign the assignment of the mortgage as the Vice President of TBW because the company filed bankruptcy and "was shut down" in August 2009. She claims Serena Harman is being used as a "robo signer." She claims "[r]obo signing documents is illegal… ." (Doc. 10 at 6). None of these allegations describe a predicate offense listed in Section 1961(1) required to establish a "pattern of racketeering activity" nor do they suggest Defendants were involved in collecting illegal gambling debts or loans with interest rates twice the rates permitted under State or Federal law. Plaintiff fails to state a claim upon which relief may be granted under RICO.

---

act which is indictable under the Immigration and Nationality Act, § 274 (bringing in and harboring certain aliens), § 277 (aiding or assisting certain aliens to enter the United States), or §278 (importation of alien for immoral purpose) if the act indictable under such of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in §2332b(g)(5)(B).

## D.  Other Claims

Finally, it is possible Plaintiff may be attempting to assert claims in her Amended Complaint which I have not identified.  The amended pleading is 61 pages long, and most of those pages are single-spaced.  Although the pleading is lengthy, Plaintiff actually includes very few facts and inserts only vague references to the TILA and to RICO.  She includes in the body of the Amended Complaint Senate Report No. 95-989 in its entirety, and an opinion from the Supreme Court of the United States which includes all of the dissents but not the case caption identifying the case.  While the case is clearly on the topic of a civil action under RICO, Plaintiff does not explain why either of these sources is relevant to her case, and does not include other references to legal causes of action.

Plaintiff is proceeding *pro se* and *pro se* plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.  *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir.1999).  Even with that liberal construction, however, Plaintiff must still include direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements.  *See Iqbal,* 556 U.S. at 678; *Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).  If Plaintiff was attempting to assert a claim other than one under the TILA or RICO, it is not apparent on the face of the Complaint and therefore fails to satisfy basic notice pleading requirements in Federal Civil Procedure Rule 8.

Finally, I note that Plaintiff alleges very briefly in her Complaint that mortgage payments were misplaced or not properly credited to account, and money was missing from her escrow account.  Whether Plaintiff is in default of her loan is a question central to the state court foreclosure action which was filed prior to this case, and which is still pending.  Those issues are immaterial to the claims asserted in this civil action.  To the extent Plaintiff believes those allegations provide a valid defense to foreclosure, she should raise them in the foreclosure action.

17

**IV. Conclusion**

For all the foregoing reasons, Defendants' Motion to Dismiss (Doc. 11) is **granted**, Plaintiff's Motion to Show Cause (Doc. 16) is **denied**, and this action is dismissed for lack of subject matter jurisdiction.  I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

SO ORDERED.


s/Jeffrey J. Helmick
UNITED STATES DISTRICT JUDGE